**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq. (KR 4963)
Paul Kizel, Esq. (PK 4176)
Wojciech F. Jung, Esq. (WJ 2047)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BIOLITEC, INC. | Case No. 13-11157 (____) |
| Debtor. | |

**DEBTOR'S MOTION FOR AN ORDER (I) GRANTING
RELIEF FROM THE AUTOMATIC STAY PURSUANT TO
11 U.S.C. § 362(d) (A) TO ALLOW THE DEBTOR TO PROSECUTE A PENDING
APPEAL OF A JUDGMENT AGAINST THE DEBTOR (B) TO ALLOW PLAINTIFFS
IN THREE ACTIONS TO CONTINUE TO PROSECUTE CLAIMS THAT ARE
PROPERTY OF THE DEBTOR'S ESTATE THROUGH AND INCLUDING
JUDGMENT (II) WAIVING THE REQUIREMENTS OF FED. R. BANKR. P. 4001(a)(3);
AND (III) GRANTING RELATED RELIEF**

Biolitec, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor** or **Biolitec**"), by and through its proposed undersigned counsel, submits this motion (the "**Motion**") for an order (I) granting the Debtor relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to (A) allow the Debtor to continue to prosecute a pending appeal of a judgment entered against it in a case captioned *AngioDynamics, Inc. v. Biolitec, Inc.,* Docket No. 1:08-cv-00004-LEK-RFT, pending before the United States Court of Appeals for the First Circuit, Docket No. 12-4364, and (B) allow the plaintiffs in two pending court actions to continue to prosecute claims that constitute property of the Debtor's estate against non-debtor defendants in

those actions; (II) waiving the requirements of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and (III) granting related relief.  In support of the Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and Chief U.S. District Court Judge Jerome B. Simandle's *Standing Order of Reference to the Bankruptcy Court Under Title 11* dated as of September 18, 2012.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  These matters are core proceedings pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are 11 U.S.C. § 362(d) and FED. R. BANKR. P. 4001.

## GENERAL BACKGROUND

3. On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Court**").

4. The Debtor continues to operate its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or creditors' committee has been appointed in this chapter 11 case.

5. The Debtor is a New Jersey corporation that was formed in 1989.  The Debtor's principal place of business is located in East Longmeadow, Massachusetts.

6. The Debtor is a privately owned company in the business of selling diode laser machines and manufacturing and selling optical fibers for the transmission of laser energy for use in various medical procedures.  As of the Petition Date, the Debtor employs approximately 24 individuals.

7. A more detailed description of the Debtor and the facts and circumstances leading to the commencement of this chapter 11 case is contained in the first day declaration of

Brian K. Foley (the "**Foley Declaration**"), filed concurrently herewith. The Foley Declaration is incorporated by reference herein.

## RELEVANT BACKGROUND

8.  As described in the Foley Declaration, as of the Petition Date, the Debtor was a defendant or co-defendant in a number of cases. Set forth below is a general description of the relevant cases that are the subject of this Motion.

**A.  The ADI NY Action**

9.  The main precipitating event leading up to the filing of this chapter 11 case was the issuance of a partial final judgment on November 8, 2012, against the Debtor in the amount of $23,156,287, in an action commenced against the Debtor on January 2, 2008, by AngioDynamics, Inc. ("**ADI**") in the United States District Court for the Northern District of New York. *See AngioDynamics, Inc. v. Biolitec, Inc., Inc.*, Docket No. 1:08-cv-00004-LEK-RFT (the "**ADI NY Action**").

10. Generally, the ADI NY Action involves claims for breach of contract based on the Debtor's alleged breach of defense, indemnification and representation provisions contained in section 7.2 of a certain supply and distribution agreement dated April 1, 2002 (the "**SDA**") that was entered into by the Debtor and ADI. Pursuant to the SDA, ADI was authorized to market, sell, offer for sale and distribute certain of the Debtor's products (the "**Products**") in the United States and Canada in the Interventional Radiology and Vascular Surgery marketplace. Section 7.2 of the SDA provides in pertinent part:

> BIOLITEC represents that *to the best of BIOLITEC's knowledge*, the manufacture, marketing, sale, distribution and use of the Products does not and will not infringe any United States or foreign patent...held by any third party. If a third party asserts that a patent...owned by it is infringed by the manufacture, marketing, sale, distribution or use of a Product...BIOLITEC agrees to undertake the sole and complete defense, at its sole cost and expense of any such claim through counsel of its choice.... (Emphasis added.)

-3-

11. In particular, ADI alleges that the Debtor failed to defend and indemnify ADI in two patent infringement lawsuits (the "**Infringement Actions**") that had been commenced against ADI, and for failure to provide ADI with non-infringing Products or to modify existing Products to be non-infringing. Both of the Infringement Actions concluded in settlement agreements, pursuant to which ADI agreed to pay $7,000,000 and $6,756,000 respectively to the plaintiffs who commenced the Infringement Actions.

12. Approximately three months before the settlements were reached, ADI filed the ADI NY Action in January 2008 in order to recover, among other things, the litigation and settlement costs associated with the Infringement Actions. Biolitec disputes that it breached any defense, indemnification and representation provisions because it did not breach any representation that it made regarding the Products.

13. On June 18, 2010, ADI and Biolitec cross-moved for summary judgment. On September 27, 2011 the court in the ADI NY Action issued a Memorandum-Decision and Order (the "**September 2011 Decision**") granting ADI's motion to the extent it sought to hold Biolitec liable for the costs of defending and settling the Infringement Actions. The Debtor firmly believes that the September 2011 Decision reached the wrong conclusion based on the facts and law because, among other things, it effectively ignored the knowledge qualifier contained in section 7.2 of the SDA.

14. Although the September 2011 Decision held the Debtor liable for the defense and indemnification costs, it did not determine the amounts due. It also denied ADI's motion to the extent it sought summary judgment based on the Debtor's alleged failure to supply ADI with a "workaround" product that would not infringe on the patents subject to the Infringement Actions.

15. Subsequently, on October 13, 2011, ADI moved for entry of partial final judgment pursuant to FRCP 54(b) with respect to the settlement amounts it paid in the Infringement Actions. Biolitec opposed this motion and cross-moved for leave to file an interlocutory appeal on the question of Biolitec's liability that was decided by the September 2011 Decision.

16. In late December 2011, ADI served another motion in the ADI NY Action for partial final judgment with respect to the attorney's fees incurred in the Infringement Actions. The motion sought approximately $3,111,000.00, plus prejudgment interest at the rate of nine percent per year. As part of the motion seeking attorney's fees, ADI submitted an affidavit by Mark Giarratana, Esq., a member of the McCarter & English law firm ("**M&E**"). M&E was, at the time, defending Biolitec in the New Jersey Action and Massachusetts Derivative Action, both of which are described later in this Motion (as well as in another action in state court in Massachusetts). The central allegations against Biolitec in the New Jersey Action and Massachusetts Derivative Action were adopted *in toto* by ADI in the ADI Massachusetts Action, which is also described later in this motion. Through the affidavit, Giarratana assisted ADI in its request for legal fees from Biolitec – M&E's own client.

17. In short, a lawyer from the firm then representing the Debtor in three actions voluntarily submitted an affidavit in the ADI NY Action in order to assist ADI in obtaining relief against M&E's own client, Biolitec. The Debtor had no prior knowledge that M&E would be taking an adverse position to the Debtor.[1]

18. On September 28, 2012, the Court in the ADI NY Action issued a memorandum decision (the "**September 2012 Decision**") in which it: (a) awarded the amount sought by ADI on its first Rule 54(b) motion for $13,756,000 in indemnification plus prejudgment interest; (b) awarded approximately $2,700,000 of the $3,111,000 sought by ADI

---

[1] The Debtor reserves all rights to assert claims against M&E in connection with its representation of the Debtor.

for legal fees on its second Rule 54(b) motion plus prejudgment interest; (c) denied Biolitec's cross-motion for 28 U.S.C. §1292(b) certification (because the judgments now were final and could be appealed as of right); and (d) denied Biolitec's cross-motion for discovery with respect to the actions of M&E that supported the $2,700,000 legal fee award.

19. On October 26, 2012, the Debtor filed a notice of appeal with respect to the September 2012 Decision and electronic notice and certification of the appeal was sent to the Second Circuit Court of Appeals on October 29, 2012. The appeal has been docketed with the Second Circuit, *see AngioDynamics, Inc. v. Biolitec, Inc.*, Docket No. 12-4364, and the Debtor perfected the appeal by filing and serving its Brief and the Joint Appendix on January 18, 2013. The Debtor is represented by Mazzotta, Siegel, & Vagianelis, P.C ("**MS&V**") in the ADI NY Action.[2]

20. On November 8, 2012, partial judgment (the "**Judgment**") was entered against Biolitec in the amount of $23,156,287.00, which includes prejudgment interest at the rate of 9.0%, plus post judgment interest at a rate of 0.18% per annum, along with costs.

21. The Debtor intends to diligently pursue the appeal of the Judgment. The Debtor's opening brief and Joint Appendix were filed with the Second Circuit on January 18, 2013, nearly a month before the February 12, 2013 filing deadline. The Debtor expects the appeal to be fully briefed with in the next three to four months.

**B.** **The New Jersey Action**

22. On June 19, 2009, an action was filed in the Superior Court of New Jersey Chancery Division, by Kelly Moran ("**Moran**") and his wife, Carol Morello ("**Morello**"), two minority shareholders and former board members and employees of Biolitec (collectively, the "**Minority Shareholders**"). *See Moran and Morello v. Biolitec, Inc., et al.*, Docket No. C-63-09,

---

[2] The Debtor has filed an application to retain MS&V as special counsel to pursue the appeal and to otherwise represent Biolitec in the ADI NY Action. The Debtor seeks to have the retention application leave heard on short notice to avoid any delay in the prosecution of the appeal.

Superior Court of New Jersey, Chancery Division, Mercer County, (the "**New Jersey Action**"). A copy of the complaint filed in the New Jersey Action is attached hereto as Exhibit A.

23. Moran and Morello have each been 5% shareholders of the Debtor since shortly after it was formed in 1989. Biolitec AG ("**BAG**") owns the remaining 90% ownership interest in Biolitec. Biomed Technology Holdings Ltd. ("**Biomed**"), a Malaysian holding company, owns 75 percent of BAG, while the remaining 25 percent of BAG is publicly owned. Dr. Wolfgang Neuberger ("**Dr. Neuberger**") owns 100% of Biomed and is the Chairman, President and Chief Executive Officer of Biolitec, the Debtor, and is Chief Executive Officer of BAG.

24. In addition to his shareholder role, Moran was the Chief Operating Officer of Biolitec until December 2008, Vice President of Sales and, along with Morello and Dr. Neuberger, one of three directors of the Debtor until he resigned his director position in August 2009. Morello also sat on the Board of Directors, was the corporate secretary and treasurer, and was Director of Regulatory Affairs during her time with the Debtor. Morello also resigned from her position with the Debtor in August 2009.

25. As a result of serious mismanagement decisions made by Moran beginning in fiscal 2007, Biolitec suffered severe operating losses in fiscal 2008 ($3.4 million) and 2009 ($6.2 million). Although cause existed to terminate Moran, Dr. Neuberger implemented a wide range of cost savings measures, including a reduction of Moran's commission rate by 50% from 2% to 1% of sales in the fall of 2008. In December 2008, after failing to take effective action to reverse Biolitec's poor economic performance, Moran was demoted from his position of Chief Operating Officer, although he remained in his position as Vice President of Sales.

26. Although Moran's demotion did not result in a further pay cut, Moran and Morello stopped coming to work and stopped performing their job duties.[3] Instead, they used

---

[3] During his last four years of employment, Moran's average annual compensation was more than $400,000.

their positions to take tens of thousand of company documents, including corporate minutes and resolutions.

27. Then, in April 2009, Moran and Morello commenced the New Jersey Action and then secretly arranged with Biolitec's bank to designate themselves as the only authorized check signatories for both Biolitec and its sister corporation, CeramOptec Industries, Inc. ("**CeramOptec**"). In August 2009, the de facto resignations of Moran and Morello were officially recognized by Biolitec and both were officially terminated for their failure to either come to work or to perform their job responsibilities.

28. The New Jersey Action was filed against the Debtor, Dr. Neuberger, BAG, and Biomed.[4] The gravamen of the action is that various assets of Biolitec were fraudulently or otherwise improperly transferred for the benefit of Dr. Neuberger. Moran and Morello (hereinafter the "**Minority Shareholders**") allege that the transfers were achieved through five categories of inter-company invoices or accounting entries for which they contend Biolitec did not receive fair consideration. The primary remedy sought by the Minority Shareholders is an accounting of all assets allegedly wrongfully transferred from Biolitec and their return to the Debtor, as well as the involuntary dissolution of Biolitec. In the alternative, the Minority Shareholders seek to compel defendants to sell their shares of Biolitec's stock to plaintiffs at a price which reflects the defendants' alleged wrongful conduct.

29. The defendants in the New Jersey Action categorically deny the assertion that there were any improper transfers by Biolitec to any of the other defendants.[5] And, in fact, virtually all of the alleged improper transfers (which the Minority Shareholders assert were made over a nearly 10 year period) occurred while Moran was serving as the Debtor's Chief Operating Officer.

---

[4] The New Jersey Action was subsequently dismissed as against Biomed for lack of personal jurisdiction.
[5] As noted earlier, M&E represented Biolitec in the New Jersey Action but was replaced by The Griffith Law Firm after Biolitec learned, *inter alia*, that M&E took an adverse position to it in the ADI NY Action. Moreover, as a consequence of M&E's handling of the New Jersey Action, the Debtor has faced and currently faces a motion to dismiss for failure to comply with discovery.

30. As described above, the Debtor is essentially a nominal defendant in the New Jersey Action with the Minority Shareholders seeking relief to recover assets from the co-defendants for the benefit of the Debtor. As explained later herein, the core claims asserted in the New Jersey Action constitute property of the Debtor's estate.

C.     **The ADI Massachusetts Action**

31. In October 2009, ADI commenced an action in the United States District Court for Massachusetts, Western Division, Docket No. 3:09-cv-30181 (the "**ADI MA Action**") against BAG and Dr. Neuberger. The claims originally asserted alleged that the defendants interfered in the SDA and should be held liable to ADI for interference with contractual relations and for violation of the Massachusetts statute barring deceptive practices.

32. In March 2010, after learning about the allegations asserted by the Minority Shareholders in the New Jersey Action, ADI amended the complaint to add Biolitec and Biomed as defendants and to assert the following claims, in substance: (a) that Biolitec's corporate veil should be pierced so that ADI can look to the other defendants in the event ADI is unable to satisfy any judgment it might obtain against Biolitec in the ADI NY Action; (b) that the defendants other than Biolitec interfered in the SDA; (c) that assets of Biolitec were fraudulently transferred to the other defendants; and (d) that the defendants violated the Massachusetts statute barring deceptive business practices. ADI supported these claims by piggybacking on the same basic allegations asserted in the New Jersey Action. A copy of the amended complaint in the ADI MA Action is attached hereto as Exhibit B.

33. Similar to the New Jersey Action, the ADI MA Action includes piercing the corporate veil and fraudulent conveyance claims which are derivative in nature and constitute property of the Debtor's estate. Such claims cannot be pursued absent modification of the stay.

**RELIEF REQUESTED**

34. By this Motion, the Debtor seeks to modify the automatic stay imposed pursuant to 11 U.S.C. § 362(d) to:

a. Permit the Debtor to prosecute an appeal of the Judgment entered against the Debtor in the ADI NY Action;

b. Permit the plaintiffs in the New Jersey Action to pursue the causes of action that constitute property of the estate as against the non-debtor defendants in that action;

c. Permit the plaintiff in the ADI MA Action to pursue the causes of action that constitute property of the estate as against the non-debtor defendants in that action.

35. In addition, the Debtor requests that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) so that the Debtor may immediately take the necessary steps to continue the prosecution of the appeal of the Judgment entered in the ADI NY Action.

## BASIS FOR RELIEF

36. Section 362(a) of the Bankruptcy Code provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

37. Section 362(d) of the Bankruptcy Code authorizes a court to grant relief from the automatic stay under certain circumstances. Section 362(d)(1) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection

(a) of this section, such as terminating, annulling, modifying, or conditioning such stay-

(1) for cause, including lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. §362(d)(1).

38. The Bankruptcy Code does not define the term "for cause." Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atl. Handling Sys., LLC), 304 B.R. 111, 129 (Bankr. D.N.J. 2003). Thus, bankruptcy courts must look at the totality of the circumstances in each particular case in determining what constitutes "cause" to lift or modify the automatic stay. Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997) (citing Trident Assoc. v. Metro. Life Ins. Co. (In re Trident Assoc.), 52 F.3d 127 (6th Cir. 1995)). See also In re Mid-Atl. Handling, 304 B.R. at 129-30 (noting that a bankruptcy court has wide discretion in determining whether to grant a motion for relief from the automatic stay for cause).

39. Although lack of adequate protection is the most common basis for granting relief from the automatic stay for "cause," courts have found that "cause" exists in other circumstances as well. 3 Collier on Bankruptcy ¶362.07[3][a] (15th ed. rev. 2004). It has been recognized that cause exists to grant relief from the automatic stay when it is "necessary to permit litigation to be *concluded* in another forum." In re Telegroup, Inc., 237 B.R. 87, 91 (Bankr. D.N.J. 1999).

40. In this case, as set forth below, cause exists to modify the stay to allow the ADI NY Action, the New Jersey Action, the Massachusetts Derivative Action, and the ADI MA Action to proceed to the extent requested by the Debtor.

### a. The ADI NY Action

41. As noted above, the Judgment has been entered against Biolitec in the ADI NY Action. Debtor, however, vigorously disputes liability and has promptly filed and perfected an appeal from the Judgment. The Debtor may not, however, continue to prosecute the appeal absent modification of the automatic stay because it is the defendant in the ADI NY Action.

42. Section 362 stays "all appeals in proceedings that were *originally brought* against the debtor, regardless of whether the debtor is the appellant or appellee." Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp., 682 F.2d 446, 449 (3d Cir. 1982) (emphasis in original). Thus, because the Debtor is the defendant in the ADI NY Action, it cannot continue to prosecute the appeal of the Judgment without first obtaining relief from the automatic stay.

43. Cause exists to allow Biolitec to pursue the appeal because the resolution of the appeal is critical to the overall status of the Debtor, its business and this chapter 11 case. If the Judgment is overturned on appeal, Biolitec will not be liable to ADI, and ADI will not be a creditor of the Debtor. The appeal of the Judgment is essentially the mechanism that the Debtor will utilize to object to ADI's claim. Accordingly, it is imperative that the Debtor be permitted to pursue the appeal of the Judgment to its rightful conclusion. Based on the foregoing, it is clear that cause exists with respect to the ADI NY Action and the stay should be modified to allow Biolitec to pursue the appeal to conclusion.

### b. New Jersey Action

44. The Debtor also seeks to modify the automatic stay to allow the plaintiffs to pursue their fraudulent conveyance and piercing the corporate veil claims against the non-debtor defendants in the New Jersey Action. The fraudulent conveyance and piercing the corporate veil causes of action are classic derivative claims that are property of the Debtor's estate. *See* In Re MortgageAmerica Corporation, 714 F.2d 1266, 1275-1277 (5th Cir. 1983); In re Buildings By Jamie, Inc., 230 B.R. 36, 43-44 (Bankr. D.N.J. 1998); In Re: Atlantic Gastroenterology Associates, Case No. 10-11077 (Bank. D.N.J. 2010) (order enforcing the automatic stay to preclude holder of disputed judgment from pursuing fraudulent conveyance and related claims against debtor's officers and affiliates) (ECF No. 92); Andrew Greenberg v. Svane, Inc., 830 N.Y.S.2d 358, 361 (N.Y. App. Div. 2007) ("Claims to recover corporate assets, such as those for fraudulent conveyance or diversion of assets by officers to their own enrichment are derivative claims . . ., as are claims that turn on piercing the corporate veil or alter ego liability where the claim could be brought by any creditor of the debtor." (internal citations

omitted)). Therefore, the pursuit of such derivative claims, even though not against the Debtor, is subject to the automatic stay.

45. Section 541 (a) (1) of the Bankruptcy Code broadly defines property of the estate as comprising all "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). See In Re: Atlantic Business and Community Corporation v. Cuffee, 901 F. 2d 325, 327 (3d Cir. 1990). Section 362(a)(3) of the Bankruptcy Code, in turn, provides that the automatic stay applies to "any act to obtain possession of property of the estate or … to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Indeed, the automatic stay is one of the fundamental protections afforded to debtors under the Bankruptcy Code. Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986). The automatic stay "is intended 'to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.'" SEC v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000) (quoting In re: United States Lines, Inc., 197 F.3d 631, 640 (2d Cir. 1999).

46. It is well established that derivative type causes of action such as state law fraudulent conveyance and piercing the corporate veil, like those asserted by the Minority Shareholders in the New Jersey Action, constitute property of the Debtor's estate pursuant to section 541(a) of the Bankruptcy Code. Morley v. Ontos, Inc. (In re Ontos, Inc.), 478 F.3d 427, 431-433 (1st Cir. 2007); Nat'l Tax Credit Partners v. Havlik, 20 F.3d 705, 708-09 (7th Cir. 1994); In Re MortgageAmerica Corporation, 714 F.2d 1266, 1275-1277 (5th Cir. 1983); In re Buildings By Jamie, Inc., 230 B.R. 36, 43-44 (Bankr. D.N.J. 1998). Therefore, the commencement or continuation of such actions are automatically stayed under section 362(a)(3) of the Bankruptcy Code upon a debtor's bankruptcy filing because they constitute acts to obtain possession or exercise control of property of the estate. In Re MortgageAmerica Corporation at 1275-1277; In re Zwirn, 362 B.R. 536, 539 (Bankr. S.D. Fla. 2007); In re AP Industries, Inc., 117 B.R. 789, 799 (Bankr. S.D.N.Y. 1990).

47. As the United States Court of Appeals for the Fifth Circuit succinctly stated in MortgageAmerica, "actions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws. . . are. . . appropriately stayed under section 362(a)(3)" of the Bankruptcy Code. 714 F.2d at 1276. Likewise, in addressing the pursuit of a claim of piercing the corporate veil, the New Jersey Bankruptcy Court in In re Buildings By Jamie, Inc. recognized that once a corporation enters bankruptcy, a claim for piercing the corporate veil is property of the debtor's estate. 230 B.R. at 42-43. Accordingly, such actions are subject to the automatic stay and cannot be pursued absent modification of the stay.

48. Although the Debtor firmly believes that the causes of action asserted in the New Jersey Action are without merit, the Debtor believes that there is no reason to hold up the resolution of those claims in the forum in which they have been pending since 2009.[6] Therefore, to the extent that the New Jersey Action asserts claims that are derivative in nature, such claims should be allowed to proceed against the non-debtor defendants up to judgment.[7]

    **c.  The ADI Massachusetts Action**

49. Finally, the Debtor seeks modification of the automatic stay to allow for the adjudication of the derivative claims of piercing the corporate veil and fraudulent transfer alleged in the ADI MA Action. Similar to the previous discussion concerning derivative claims raised in the New Jersey Action, the causes of action raised in the ADI MA Action seek to vindicate the Debtor's rights in certain property that was allegedly improperly transferred from the Debtor to the remaining defendants. Any such causes of action are property of the Debtor's estate and cannot be pursued absent modification of the stay. In Re MortgageAmerica Corporation at 1275-1277; In re Zwirn, 362 B.R. 536, 539 (Bankr. S.D. Fla. 2007); In re AP Industries, Inc., 117 B.R. 789, 799 (Bankr. S.D.N.Y. 1990).

---

[6] The Debtor is not seeking to modify the stay to allow the New Jersey Action to proceed against the Debtor, which is essentially a nominal party in that action.

[7] In the unlikely event there is any recovery in the New Jersey Action, the benefit of that recovery is property of the estate and must be returned to the estate so that it may be distributed to all of the Debtor's creditors.

50. Again, at this time, the Debtor does not believe that it is necessary to delay the continued prosecution of such derivative causes of action as against the non-debtor defendants. Accordingly, the Debtor seeks modification of the automatic stay to allow the derivative claims that have been asserted in the ADI MA Action to proceed as against non-debtor defendants to judgment.

## WAIVER OF STAY

51. Finally, a waiver of the requirements of Bankruptcy Rule 4001(a)(3) is appropriate under the circumstances.

52. Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). Under the circumstances of this case there is no reason to delay the effectiveness of the stay order because the relief requested is being sought by the Debtor.

## PRIOR REQUEST AND WAIVER OF BRIEF

53. No prior request for the relief sought herein has been made to this or to any other court.

54. As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement under D.N.J. LBR 9013-2 of filing a brief be waived.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order granting the Motion in its entirety and grant such other and further relief as is just and proper.

Dated: January 22, 2013 **LOWENSTEIN SANDLER LLP**

By: */s/ Paul Kizel*
    Kenneth A. Rosen, Esq. (KR 4963)
    Paul Kizel, Esq. (PK 4176)
    Wojciech F. Jung, Esq. (WJ 2047)

*Proposed Counsel to the Debtor and Debtor-in-Possession*