**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**DEC. 16, 2014**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

In Re:

**BIOLITEC, INC.,**

　　　　　　　　Debtor.

Case No.:　　13-11157 (DHS)

Judge:　　Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Otterbourg, Steindler, Houston & Rosen, P.C.
David Posner, Esq. (*pro hac vice*)
230 Park Avenue
New York, New York 10169-0075
***Counsel for Melanie L. Cyganowski,***
***Chapter 11 Trustee***

Trenk, DiPasquale, Della Fera & Sodono, P.C.
Joseph J. DiPasquale, Esq.
Henry M. Karwowski, Esq.
347 Mount Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
***Co-Counsel to Parties-in-Interest,***
***Biolitec AG, BioMed Technology Holdings,***
***Ltd., CeramOptec Industries, Inc., and***
***Wolfgang Neuberger***

McDonnell Crowley Hofmeister, LLC
Brian T. Crowley, Esq.
115 Maple Avenue
Suite 201
Red Bank, New Jersey 07701
***Local Counsel for Melanie L. Cyganowski,***
***Chapter 11 Trustee***

The Griffith Firm
Edward Griffith, Esq.
45 Broadway, Suite 2200
New York, New York 10006
***Co-Counsel to Parties-in-Interest,***
***Biolitec AG, BioMed Technology Holdings,***
***Ltd., CeramOptec Industries, Inc., and***
***Wolfgang Neuberger***

Webber McGill LLC
Douglas J. McGill, Esq.
760 Route 10 West, Suite 104
Whippany, New Jersey 07981
***Co-Counsel for Creditor,***
***AngioDynamics, Inc.***

Bond Schoeneck & King, PLLC
Joseph Zagraniczny, Esq. (*pro hac vice*)
Stephen A. Donato, Esq.  (*pro hac vice*)
Sara C. Temes, Esq.      (*pro hac vice*)
One Lincoln Center
Syracuse, New York 13224
***Co-Counsel for Creditor,***
***AngioDynamics, Inc.***

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

The Chapter 11 Trustee (the "Trustee") in the chapter 11 bankruptcy proceeding of Biolitec, Inc. (the "Debtor") has filed a motion (the "Motion") for entry of an order ("Order") dismissing the Debtor's chapter 11 case pursuant to 11 U.S.C. §§ 105(a), 305(a), 349, and 1112(b) and approving a settlement agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.  The United States Trustee (the "U.S. Trustee") objects to the Motion on the ground that there is no authority for the relief sought by the Trustee under the Bankruptcy Code.  Biolitec AG, Biomed Technology Holdings, Ltd. ("Biomed"), CeramOptec Industries, Inc. ("CeramOptec"), Biolitec Holdings US, Inc., and Wolfgang Neuberger ("Neuberger") (collectively, the "Non-Debtor Affiliates") objected to the Motion and filed a cross-motion for entry of an order converting the case to a chapter 7 proceeding pursuant to 11 U.S.C. § 1112(b) (the "Cross-Motion").

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984, as amended September 18, 2012. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (F).  Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).  The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL BACKGROUND

The following is an abbreviated factual and procedural history of the case, as the parties are intimately familiar with the proceedings at this point in the litigation. The Court provides only the facts relevant to this Opinion and directs the parties to earlier decisions of this Court and the district courts for further background.[1]

### I. Parties and District Court Litigations

Biolitec, Inc., the Debtor, is the United States Affiliate of a multi-national group of companies in the business of manufacturing and distributing fiber optics, medical lasers, and photo-pharmaceuticals. It is a closely held corporation, 90% of which is owned by Biolitec AG, a German corporation. Neuberger owns approximately 75% of Biolitec AG, and as CEO, President, and Chairman of the Board of both the Debtor and Biolitec AG, controls the companies and their related affiliates. The Debtor's schedules list Biolitec Holding US, Inc. as an equity holder and secured creditor of the Debtor, and CeramOptec, and Biolitec Technology Holdings, Ltd., as unsecured creditors of the Debtor.[2]

AngioDynamics is an international manufacturer and distributor of medical products and the largest unsecured creditor of the Debtor. AngioDynamics's claims against the Debtor have their origins in an April 2002 Supply and Distribution Agreement ("SDA") pursuant to which it received the exclusive right to distribute certain of the Debtor's products in North America. Under the SDA, the Debtor was obligated to defend

---

[1] *See In re Biolitec, Inc.*, No. 13-11157, 2013 WL 1352302 (Bankr. D.N.J. Apr. 3, 2013); *In re Biolitec, Inc.,* No. 13-5864, 2013 WL 6795400 (D.N.J. Dec. 16, 2013); *AngioDynamics, Inc. v. Biolitec AG*, 991 F. Supp. 2d 299, 301 (D. Mass. 2014); *AngioDynamics, Inc. v. Biolitec AG*, 910 F. Supp. 2d 346 (D. Mass. 2012), *aff'd*, 711 F.3d 248 (1st Cir. 2013); *AngioDynamics, Inc. v. Biolitec, Inc.*, No. 09-cv-30181, 2011 WL 3157312 (D. Mass. July 25, 2011).

[2] On December 4, 2014, the Trustee objected to the claims filed by the Non-Debtor Affiliates and other entities related to the Debtor. *See* ECF No. 592-97.

and indemnify AngioDynamics against third-party patent infringement claims arising from the distribution and marketing of the Debtor's products. After the Debtor failed to defend or indemnify AngioDynamics in two separate patent infringement suits, AngioDynamics sued for breach of contract in January 2008 in the United States District Court for the Northern District of New York (the "New York Action"). In November 2012, the district court found in favor of AngioDynamics and entered partial, final judgment against the Debtor in the amount of $23,156,287.00 (the "Judgment Claim").[3]

In October 2009, AngioDynamics filed suit against the Debtor, Biolitec AG, Biomed, and Neuberger in the United States District Court for the District of Massachusetts, alleging fraudulent transfer and tortious interference with a contract (the "Massachusetts Action"). AngioDynamics alleged that the Debtor, knowing that it was likely to incur substantial liability as a result of its obligation to defend and indemnify AngioDynamics in the patent litigations, fraudulently transferred over $18 million of assets to Biolitec AG and other affiliates between 2004 and 2009. On August 29, 2013, the district court issued a preliminary injunction that prohibited the Debtor from further transferring any assets and specifically prohibited Biolitec AG from completing a planned merger with a newly formed Austrian subsidiary.

## II.     Bankruptcy Proceeding and Subsequent Developments

On January 22, 2013, the Debtor filed a chapter 11 petition in this Court and immediately filed for relief from the automatic stay to allow pending litigations to continue. Due to Neuberger's repeated defiance of court orders, the most flagrant of which was causing Biolitec AG to merge with the Austrian subsidiary in direct violation

---

[3] The court did not rule on a cause of action seeking damages for costs incurred by AngioDynamics in obtaining its own technologies to replace the infringing products acquired from Biolitec, which AngioDynamics asserts could be in excess of $8 million (the "Additional Damage Claim").

5

of the district court's injunction, AngioDynamics moved for the appointment of a chapter 11 trustee.[4] Having legitimate concerns about the Debtor's ability to administer the estate, the Court appointed the Trustee on April 12, 2013.

On August 9, 2013, the Court approved a settlement between the Trustee and AngioDynamics in which substantially all of the Debtor's assets were sold to AngioDynamics. The settlement fixed AngioDynamics's allowed unsecured claim at $29 million, but provided that AngioDynamics would forego any distribution from the estate on its $23 million Judgment Claim and would receive a distribution on the remaining $6 million Additional Damage Claim only if all general unsecured claims (excluding those of the Debtor's affiliates) were paid in full. AngioDynamics agreed that instead of recovering from the Debtor, any potential recovery would come from Biolitec AG or the other defendants in the Massachusetts Action.

On August 29, 2013, the Trustee filed an adversary proceeding against Biolitec AG, Biolitec U.S., Inc., CeramOptec, Biomed, Biolitec Medical Devices, Inc., Biolitec FZ LLC, Neuberger, and several other individually named defendants, seeking, *inter alia*, the turnover of estate property, avoidance of unauthorized post-petition transfers of proprietary information and intellectual property, and other injunctive relief.[5] On November 12, 2013, the Trustee filed an adversary complaint against CeramOptec

---

[4] As a result of Neuberger's intentional misconduct, the district court in the Massachusetts Action held the defendants in contempt of court and ordered Neuberger to appear personally to explain his actions. When Neuberger refused to comply with the order, the court issued a warrant for his arrest and imposed fines for his failure to comply with the injunction. *See AngioDynamics, Inc. v. Biolitec AG*, 991 F. Supp. 2d 299, 301 (D. Mass. 2014).

[5] *See Melanie Cyganowski, Chapter 11 Trustee for Biolitec, Inc. and AngioDynamics, Inc. v. Biolitec U.S. Inc., et al.*, Adv. Pro. No. 13-01883, Aug. 29, 2013, ECF No. 275.

seeking to avoid the Debtor's alleged fraudulent transfer of real property located at the Debtor's Massachusetts headquarters to CeramOptec (the "CeramOptec Proceeding").[6]

On March 18, 2014, the district court in the Massachusetts Action entered default judgment in favor of AngioDynamics due to the defendants' bad faith failure to comply with discovery obligations. The court awarded AngioDynamics a $74,920,422.57 judgment against Biolitec AG, Biomed, and Neuberger, which includes an award for damages arising out of the Debtor's fraudulent transfer of the real property that is the subject of the CeramOptec Proceeding.

### III.     Proposed Settlement and Structured Dismissal

On November 10, 2014, the Trustee filed a Motion to approve a second settlement between the Trustee and AngioDynamics and to dismiss, subject to a number of conditions, the Debtor's chapter 11 bankruptcy proceeding.[7] The Motion argues that sections 105(a), 305(a), and 1112(b) provide the statutory authority for a "structured dismissal arrangement" in which the case is dismissed and a liquidating trust ("Liquidating Trust") is formed to collect and distribute the Debtor's remaining assets, assume and control actions commenced by the Trustee, and wind down the Debtor's bankruptcy case. The key terms of the proposed settlement and structured dismissal may be summarized as follows:

---

[6] *Melanie Cyganowski, Chapter 11 Trustee for Biolitec, Inc. v. CeramOptec Industries, Inc.*, Adv. Pro. No. 13-02098, November 12, 2013, ECF No. 337. The adversary proceeding also seeks to avoid the Debtor's transfer of signed Andy Warhol artwork to CeramOptec for $75,000.

[7] *See* Motion for Order (i) Pursuant to Bankruptcy Rule 9019 for Approval of Second Settlement Agreement, (ii) Pursuant to Sections 105(a), 305(a), 349 and 1112(b) of the Bankruptcy Code Establishing a Liquidating Trust and Dismissing the Debtor's Chapter 11 Case, November 10, 2014, ECF. No. 556 ("Motion").

- The Debtor's chapter 11 case will be dismissed pursuant to § 1112(b); however, the Court will retain jurisdiction over the two adversary proceedings currently pending in the case, the claims reconciliation and objection process, and all matters related to the Liquidating Trust.

- With the exception of any potential interest of the estate in the Massachusetts Action, the Trustee will contribute all remaining estate assets to the Liquidating Trust. The estate will relinquish and assign any interest it has in the Massachusetts Action (or in any new action commenced by AngioDynamics against the Non-Debtor Affiliates to collect on its Judgment Claim) to AngioDynamics, although AngioDynamics will contribute a portion of any recovery obtained in these actions (up to $2,000,000) to the Liquidating Trust.

- AngioDynamics will fund the formation of the Liquidating Trust and make additional contributions for the payment of allowed administrative expense claims. AngioDynamics will also contribute any interest it might have in the real property that is the subject of the CeramOptec Proceeding to the Liquidating Trust.

- Development Specialists, Inc. ("DSI") will be appointed as the liquidating trustee ("Liquidating Trustee"). AngioDynamics will serve as trust advisor to DSI and "provide direction or consent to all significant actions of the Liquidating Trust."[8]

- The Liquidating Trustee will be substituted for the Trustee in the two pending adversary proceedings and any other action commenced by the Trustee. The Liquidating Trustee will also be substituted for the Trustee to oversee the claims reconciliation and objection process. AngioDynamics will be joined as a party to these actions and pursue them for the benefit of the Liquidating Trust.

- All claims of the Non-Debtor Affiliates will be subordinated to all allowed claims.

- The Trustee will be released from any liability in connection with the chapter 11 case.

On November 25, 2014, the Non-Debtor Affiliates objected to the Motion and filed a Cross-Motion to convert the case to chapter 7.

---

[8] Motion, 7.

8

## DISCUSSION

I. **Trustee's Motion**

The Trustee's proposed Order seeks to approve the terms of a settlement between the Trustee and AngioDynamics pursuant to Bankruptcy Rule 9019 and a structured dismissal of the case pursuant to sections 105(a), 1112(b) and 305(a). Additionally, notwithstanding section 349, the Order requests that all previous orders of this Court entered in the Debtor's chapter 11 proceeding remain in effect and survive the dismissal of the case.

A. **Federal Rule of Bankruptcy Procedure 9019**

The Trustee argues that section 105(a) and Bankruptcy Rule 9019 permit the Court to approve the proposed settlement with AngioDynamics. A court may approve a settlement pursuant to Rule 9019 upon making a determination that it is "fair and equitable" and in the best interest of creditors and the estate. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968). A settlement is fair and equitable as long as "senior interests are entitled to full priority over junior ones." *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984). In evaluating whether a proposed settlement is in the best interest of creditors and the estate, courts look to the following factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1991). The proponent of a settlement has the burden of proving its reasonableness and courts must take into

9

consideration "the fairness of the settlement to the other persons, i.e., the parties who did not settle." *See In re TCI 2 Holdings, LLC*, 428 B.R. 117, 136 (Bankr. D.N.J. 2010) (quoting *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006)).

Because the Trustee's Motion seeks to combine the proposed settlement with a dismissal of the case, its reasonableness cannot be evaluated without analyzing and considering the effect of dismissal on all parties.

### B.  Dismissal Pursuant to 11 U.S.C. § 1112(b)

The Motion also seeks an order dismissing the case pursuant to § 1112(b), which requires conversion or dismissal of a chapter 11 proceeding if the movant establishes cause and such relief is in the best interests of the estate and creditors. *See* 11 U.S.C. § 1112(b). Section 1112(b)(4) provides a non-exhaustive list of grounds that constitute "cause" for dismissal or conversion. 11 U.S.C. § 1112(b)(4)(A)-(P). If cause exists, the court must determine whether conversion or dismissal is in the best interests of the estate and its creditors. *See Rollex Corp. v. Associated Materials (In re Superior Sliding & Window)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert."). Dismissal may be appropriate where a debtor's assets have been liquidated and there is nothing left to reorganize. *See Camden Ordinance Mfg. Co. of Ark., Inc. v. United States Trustee (In re Camden Ordinance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000).

The Trustee argues that dismissal is warranted under the first of the grounds listed in § 1112(b), which permits dismissal or conversion where there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). The Trustee points out that administrative

10

expenses are depleting the limited pool of remaining estate funds and that there is no likelihood of rehabilitation because the Debtor's sale of substantially all of its assets has left it non-operational and with no business to reorganize. The Trustee argues that the estate lacks the funds needed to finance a chapter 11 liquidation plan and that dismissal is preferable to conversion because conversion would only increase administrative expenses without providing any benefits since the estate has already been assessed and administered.[9]

Finally, the Motion requests that the Order provide, notwithstanding section 349, that all orders of this Court remain in full effect and survive the dismissal of the case, and that dismissal is subject to the Court's approval of the settlement agreement and retention of jurisdiction over the pending adversary proceedings and all matters related to the Liquidating Trust. Section 349 provides that the effect of dismissing a case is to return all parties and property rights to their pre-petition positions. *See* 11 U.S.C. § 349; H.R. Rep. No. 595, 95th Cong., 1st Sess. 338 (1977) (dismissal is intended to "undo the Bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.").

C. **11 U.S.C. § 105(a)**

The Trustee argues that section 105(a) gives the court the equitable authority to enter the proposed Order dismissing the case and approving the settlement agreement.

---

[9] Additionally, the Trustee argues that dismissal is warranted under § 305(a)(1). This section, traditionally employed by courts to dismiss involuntary cases, states that a court may "dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a). Although section 305(a) applies to voluntary cases, because a dismissal pursuant to this section is appealable only to the district court or a bankruptcy appellate panel, it is considered an "extraordinary remedy" that should be granted only if it is shown that both the debtor and its creditors "would be 'better served' by a dismissal." *See In re Monitor Single Lift I Ltd.,* 381 B.R. 455, 463 (Bankr. S.D.N.Y. 2008) (quoting *In re Eastman*, 188 B.R. 621, 624 (9th Cir. BAP 1995)).

Section 105(a) provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). While the language of § 105 is broad, courts are empowered to exercise their authority under this section "to enforce the provisions of the Code, not to add on to the Code as they see fit." *In re Fesco Plastics Corp.*, 996 F.2d 152, 156 (7th Cir. 1993) (citing *In re Morristown & Erie R.R. Co.,* 885 F.2d 98, 100 (3d Cir. 1989). As the Supreme Court recently stated:

> It is hornbook law that §105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code . . . We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."

*Law v. Siegel*, 134 S. Ct. 1188, 1194-95 (2014) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

The Trustee argues that bankruptcy courts have used section 105(a) to approve structured dismissals in which the case is dismissed for cause but the court retains jurisdiction over the claims reconciliation process and distributions to creditors. In the only reported decision cited by the Trustee, *In re Fleurantin*, 420 Fed. Appx. 194, 196-97 (3d Cir. 2011), the bankruptcy court approved a pro se debtor's motion to dismiss his case on the condition that estate assets be used to pay the chapter 7 trustee's administrative costs and taxes incurred during the liquidation of the estate. *Id.* Although the case was dismissed, the bankruptcy court retained jurisdiction over payment of these distributions. On appeal, the Third Circuit held that the court did not abuse its discretion in approving dismissal subject to these conditions, as opposed to dismissing the case outright, because this resolution was in the best interests of the estate and its creditors

12

given the debtor's repeated attempts to obstruct the administration of case and the resulting diminution of estate assets. *Id.* at 197.

Although not cited by the Trustee, the facts of *In re Buffet Partners, L.P.*, No. 14-30699, 2014 WL 3735804 (Bankr. N.D. Tex. July 28, 2014), are more relevant to the instant matter. There, shortly after the chapter 11 petition was filed the debtor and the unsecured creditors committee filed a joint motion to approve a settlement that provided for the sale of substantially all of the Debtor's assets to the stalking-horse bidder and secured lender, Chatham Credit Management III, LLC ("Chatham"). The settlement proposed that Chatham or any qualified overbidder would fund the creation of a trust for the benefit of unsecured creditors, pay the expenses of administering the trust, and waive any unsecured deficiency claim, in exchange for the committee's approval of a final cash collateral order and releases between all parties. *Id.* at *1. The Court approved the settlement and Chatham won the auction. The debtor and the unsecured creditors' committee then filed a joint motion to dismiss that made dismissal contingent upon, *inter alia*, the following conditions: the committee's completion of the claims reconciliation process and distribution of funds to unsecured creditors, the court's retention of jurisdiction to review fee applications and any disputes regarding orders entered during the case, and the entry of an order stating that all prior orders of the court would remain in effect notwithstanding section 349. *Id.* at *2.

Despite recognizing that "[n]ot much law, statutory or otherwise, exists regarding structured dismissals of this type," the court held that §§ 1112(b) and 105(a) provided sufficient authority to grant the relief sought. *Id*. Although the United States Trustee objected, arguing that the Bankruptcy Code does not provide for a structured dismissal as

13

a means of concluding a chapter 11 case, the court found it significant that "not one party with an economic stake in the case . . . objected to the dismissal." *Id*. at *4. It noted that the process for winding down the estate included appropriate disclosures, ensured that parties' rights were enforced in accordance with the absolute priority rule, and was in the best interest of the estate and all creditors. *Id.* at *3. Thus, the court reasoned that, while not expressly provided for in the Code, a structured dismissal may be an appropriate resolution to a case where the process includes sufficient guarantees that fundamental rules and principles governing the administration and distribution of estate assets are upheld. However, the court noted that section 105 does not give parties "carte blanche to enter into any settlement they choose." *Id.* at *3; *see also United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992) (noting that § 105 does not give courts "free-floating discretion to redistribute rights in accordance with . . . personal views of justice and fairness, however enlightened those views may be."). Crucial to the court's holding was the fact that the structured dismissal was essentially consensual and satisfied the most important Code requirements, including disclosure, consent or voting of creditors, and compliance with statutory priorities and the absolute priority rule. *See In re Buffet Partners*, *L.P.*, 2014 WL 3735804 at *3.

Here, the Motion, while passing the "practicality" test, must be denied because the structured dismissal seeks to alter parties' rights without their consent and lacks many of the Code's most important safeguards. It is well-established that § 105 may not be invoked to provide relief that contradicts the express requirements of the Code. *See In re Combustion Eng'g, Inc.,* 391 F.3d 190, 286 (3d Cir. 2004) ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy

14

Code, and must be exercised within the parameters of the Code itself."). Even if a structured dismissal would result in more assets being made available to the creditor body, such relief may not be approved without assurances that creditor protections provided by confirmation or liquidation pursuant to § 1129 or dismissal or conversion pursuant to § 1112(b) are either present or waived by all parties. If a chapter 11 case could be dismissed solely to avoid additional expenses associated with liquidating the estate, parties would rarely, if ever, convert to chapter 7 and the conversion option in section 1112(b) would essentially be rendered superfluous. Section 105 cannot be interpreted to create the authority for this result. *See Resorts Int'l v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1402 (9th Cir. 1995) ("Section 105 does not authorize relief inconsistent with more specific law."); *United States Trustee v. Price Waterhouse,* 19 F.3d 138, 142 (3d Cir. 1994) ("[B]ankruptcy courts cannot use equitable principles to disregard unambiguous statutory language.") (quoting *In re Middleton Arms L.P.*, 984 F.2d 723, 725 (6th Cir. 1991)).

If, as the Trustee asserts, the estate lacks the funds needed to confirm or liquidate under chapter 11, section 1112(b) provides that the case may be dismissed outright or converted to chapter 7 and liquidated under the supervision of a chapter 7 trustee. If the case is dismissed, all parties' pre-petition rights and interests are restored. If the case is converted, the chapter 7 trustee protects creditors' rights by accounting for estate assets, issuing a final report that addresses liquidated assets, claims quantified, and distributions proposed, and distributing assets pursuant to the final report. Thus, under conversion or dismissal under § 1112(b), all parties to the bankruptcy proceeding are assured that their interests are accounted for and preserved. Here, the proposed structured dismissal

15

arrangement lacks such assurances. Without the consent of all interested parties, it seeks to execute binding assignments of rights and releases of liability, to modify the claims distribution process, to replace the chapter 7 trustee with a Liquidating Trustee that is not subject to the duties and requirements of the Code, and to subordinate the claims of the Non-Debtor Affiliates in the absence of this Court's determination that subordination is warranted.[10] These fundamental Code protections cannot be bypassed without the consent of all parties with an economic stake in the estate.

The Trustee also has not met its burden of showing that the settlement is "fair and equitable" and in the best interest of the estate and its creditors. While it may be assumed that the settlement is in the best interest of AngioDynamics, the Court must analyze the effect of the settlement on all parties to the bankruptcy proceeding, and not simply the largest creditor, when making its reasonableness determination. *See In re Buffet Partners*, *L.P.*, 2014 WL 3735804 at *2 ("[T]he best interests of creditors test focuses on the interest of the entire creditor body; it does not focus on individual creditor interests.") (quoting *In re OptInRealBig.com, LLC,* 345 B.R. 277, 290 (Bankr. D. Colo. 2006)); *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994) (noting that "the court must consider the interests of *all* of the creditors" and that the best interests of creditors are "not served by merely tallying the votes of the unsecured creditors and yielding to the majority interest."). The settlement proposes to fund the Liquidating Trust primarily through the transfer of most of the estate's remaining assets and interests,[11] the proceeds

---

[10] The settlement provides that "*all* claims of the Non-Debtor Affiliates, whether secured or unsecured, priority and/or administrative expense claims, shall be disallowed or subordinated to all Allowed Claims, including, but not limited to, AngioDynamics' Judgment and Claim and Additional Damage Claim, as set forth in the Dismissal Order." Motion, Ex. A (Second Settlement Agreement by and between Biolitec, Inc. and AngioDynamics, Inc.), 6 n. 1.

[11] As discussed above, the settlement proposes to transfer all remaining assets of the estate to the Liquidating Trust with the exception of the estate relinquishing and assigning to AngioDynamics any

16

of any recoveries obtained in the adversary proceedings, and a portion of any recovery obtained by AngioDynamics in the pending litigation against the Non-Debtor Affiliates. However, it is not clear that this result is preferable to a chapter 7 liquidation because any recovery obtained in the adversary proceedings already belongs to the estate and it is unknown whether AngioDynamics will be successful in the pending litigation against the Non-Debtor Affiliates or be able to collect on any judgment obtained.[12] Thus, the Court cannot determine that the settlement is in the best interests of creditors.

Another serious concern with the proposed settlement is the role played by AngioDynamics in the claims resolution process. Even though the Trustee concedes that this bankruptcy proceeding is essentially a two-party dispute between AngioDynamics and the Non-Debtor Affiliates, the settlement proposes that estate assets will be distributed by a Liquidating Trustee whose actions are subject to the direction or consent of AngioDynamics. The Liquidating Trustee is required to consult AngioDynamics before taking any significant action and AngioDynamics has the power to approve or disapprove the resolution of all disputed claims.[13] In effect, the proposal would result in

---

interest it might have in any potential recovery obtained by AngioDynamics from the Non-Debtor Affiliates and related entities in the Massachusetts Action or any other action commenced by AngioDynamics to collect on its Judgment Claim (although AngioDynamics agreed to contribute a portion of any recovery obtained on its Judgment Claim to the Liquidating Trust).

[12] There is also a legitimate question as to whether the Court would be able to exercise jurisdiction over the pending adversary proceedings, which are "core" to the Debtor's bankruptcy, following a dismissal of the case. *See Henson v. NovaStar Mortg., Inc. (In re Henson),* No. 06-20122, 2009 WL 1543777 at *1-2 (Bankr. D.N.J. June 2, 2009) (noting that while courts have discretion to retain jurisdiction over proceedings "related to" the bankruptcy case, they have "[n]o such discretion . . . for an adversary proceeding 'arising under' or 'arising in' a title 11 case." (quoting *In re J & L Structural, Inc.,* 299 B.R. 89, 92 (Bankr. W.D. Pa. 2003)); *See* Complaint to Avoid and Recover Transfers, Adv. Pro. No. 13-02098, Nov. 12, 2013, ECF No. 1, 2 at ¶ 4 ("This adversary proceeding is a core proceeding."); Verified Adversary Complaint for Temporary, Preliminary and Permanent Injunctive Relief, Adv. Pro. No. 13-01883, Aug. 29, 2013, ECF No. 1, 2 at ¶ 2 ("This adversary proceeding is a core proceeding pursuant to 28 § U.S.C. 157(b)(2)(A), (E), and(O)."). If the case is dismissed and it is later determined that the Court lacks jurisdiction over the adversary proceedings, creditors would lose the ability to share in any potential recovery that would have belonged to the estate.

[13] *See* Motion, Ex. B (Biolitec, Inc. Liquidating Trust Agreement), 11 at ¶ 5.1.

17

the Trustee's statutory duties being assumed by AngioDynamics. Aside from the lack of authority for turning control over the administration of estate assets to a creditor, absent plan confirmation, it is not clear how the interests of all creditors would be served by a claims resolution process subject to the control of an unsecured creditor whose interests are in direct conflict with other claimants. Even if dismissing the case and avoiding administrative expenses associated with liquidating the estate would result in a greater pool of assets for distribution, this benefit might well be outweighed by the burden placed on creditors to prove their claims and the possibility of additional litigation in connection with an uncertain claims resolution and distribution process. For obvious reasons, the interests of the creditor body as a whole are likely better served by the bankruptcy process, where claims are entitled to prima facie validity and the resolution of disputed claims is overseen by a disinterested chapter 7 trustee and the court.

Finally, even though the settlement clearly affects parties' rights by assigning rights and interests, forcing creditors to receive distributions through the Liquidating Trust instead of the bankruptcy process, and subordinating the claims of the Non-Debtor Affiliates, parties other than those to the settlement did not receive disclosures or the opportunity to negotiate or vote on the settlement's provisions. In this respect, the structured dismissal resembles an impermissible *sub rosa* plan. It is well-established that courts may not approve settlements that have the effect of a *sub rosa* plan and accomplish an "end run around the protection granted creditors in Chapter 11 of the Bankruptcy Code." *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1224 (5th Cir. 1986); *see also In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983) ("The debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation

18

of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with a sale of assets.").

Thus, while courts have occasionally permitted structured dismissals by adopting a broad interpretation of § 105(a), the Court does not have the authority to grant the Motion proposed here. The burden of demonstrating that the proposed settlement and dismissal are in the best interests of the estate and its creditors has not been satisfied, and in the absence of the consent of all parties, the Court is precluded from approving a settlement that alters parties' rights but ignores many of the Code's most important creditor protections.

## II.  The Non-Debtor Affiliates' Cross-Motion

In response to the Trustee's Motion, the Non-Debtor Affiliates filed a Cross-Motion to convert the case to chapter 7. The Non-Debtor Affiliates argue that should the Court find that cause exists under § 1112(b), the case should be converted to chapter 7 because conversion is in the best interest of creditors and the estate. The Trustee and AngioDynamics objected to the Cross-Motion, arguing that it was not filed with sufficient notice pursuant to Bankruptcy Rule 2002(a)(4). Bankruptcy Rule 2002(a)(4) provides that a motion seeking to convert a chapter 11 proceeding requires twenty-one days' notice to all creditors, the debtor, and the trustee. Fed. R. Bankr. P. 2002(a)(4).

Here, the Trustee's Motion was filed on November 10, 2014, and scheduled to be heard on December 2, 2014. The Non-Debtor Affiliates filed their objection and Cross-Motion on November 25, 2014. The Motion was heard and the record was kept open until this date to assure sufficient time for objections to the Cross-Motion. None but those discussed here have been filed. Accordingly, for the reasons discussed, the Trustee

19

is directed to determine whether the case should be converted to chapter 7 under section 1112(b) or liquidated pursuant to section 1129.

## CONCLUSION

For the reasons stated above, the Trustee's Motion is denied. The Non-Debtor Affiliates' Cross-Motion to convert the case to chapter 7 is denied without prejudice so that the Trustee may determine whether the case should be converted to chapter 7 under § 1112(b) or liquidated pursuant to § 1129.

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

*s/ Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: December 16, 2014